UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA C. PAZOL, MARIA C. NEWMAN, LISA RUSS, and AUDREY J. BENNETT, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>            v.<br><br>TOUGH MUDDER INCORPORATED, TOUGH MUDDER, LLC, and BK BRIDGE EVENTS, LLC,<br><br>    Defendants. | C.A. No. 4:19-cv-40010-TSH |

**TOUGH MUDDER'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS COUNTS I-IV AND VII-VIII**

As the Court is aware, Defendants Tough Mudder Incorporated, Tough Mudder, LLC, and BK Bridge Events, LLC (collectively, "Tough Mudder") and Plaintiffs Lisa C. Pazol, Maria C. Newman, Lisa Russ, and Audrey J. Bennett (collectively, "Plaintiffs") have been involved in protracted litigation for more than four years in five federal and state courts. At every turn, Plaintiffs have pursued every avenue to avoid the arbitration provision they *voluntarily* agreed to when they registered for an obstacle course event hosted by Tough Mudder. (*See* Dkt. 15 at 2.) Every court that has addressed the issue – both federal and state – has agreed with Tough Mudder that Plaintiffs must bring those claims, if at all, as individuals – not as a class – and in arbitration – not in the courts.

Now, following a mediated settlement and an unforeseen delay in Tough Mudder's ability to pay the settlement amount, Plaintiffs are attempting to use their Second Amended Complaint

(Dkt. 1-1) ("SAC")[1] as another strategy to revive their dismissed claims and evade arbitration – this time by upending the settlement despite the fact that Tough Mudder can and has offered to pay the settlement amount with statutory interest.

While Tough Mudder submits that, in light of its good faith efforts to comply with the settlement agreement and make Plaintiffs whole, no litigation was necessary, this action is at most a straightforward contract case to enforce the settlement agreement. As such, Counts I-IV and VII-VIII have no place here.

Counts I-IV have been repeatedly ordered to arbitration, and Count VIII is derivative of Counts I-IV and likewise arbitrable. Plaintiffs cannot and should not be permitted to unwind the preceding four years of litigation in further pursuit of their defunct claims.

In addition, Count VII, Plaintiffs' new Chapter 93A claim, improperly attempts to convert this straightforward contract action into much more. The law is clear that a simple breach of contract – which is all that plaintiffs have pleaded here – does not give rise to a Chapter 93A claim.

Consequently, Counts I-IV and VII-VIII should be dismissed.

## RELEVANT PROCEDURAL AND FACTUAL HISTORY

### I. PLAINTIFFS' ORIGINAL ACTION

Plaintiffs filed their original action against Tough Mudder on September 2, 2014, setting forth putative class claims related to the Plaintiffs' inability to participate in the "Mudderella"

---

[1] On January 7, 2019, while this action was pending in the Worcester Superior Court, Plaintiffs filed a motion to amend their First Amended Complaint, which was dismissed in 2017. This action was removed to this Court on January 10, 2019, and the Superior Court received notice of the removal on January 11, 2019. It appears that the Superior Court allowed Plaintiffs' motion to amend before receiving notice of the removal of this action. Tough Mudder respectfully submits that allowance of Plaintiffs' motion to amend was procedurally improper, *inter alia*, because the First Amended Complaint had been dismissed, and consequently there was no operative complaint to amend. Instead, Plaintiffs should have initiated a new action. Nevertheless, for the sake of judicial economy, Tough Mudder treats that SAC as the operative complaint.

4827-1196-6854

obstacle event hosted by Tough Mudder in September 2014 (the "Underlying Claims").  (Dkt. 15 at 1-2.)  Tough Mudder removed that action to this Court on December 12, 2014 and then promptly moved to dismiss and compel individual (rather than class) mediations and arbitrations.  (*Id.* at 2.)  On April 22, 2015, this Court granted Tough Mudder's motion, holding that, pursuant to the arbitration agreement Plaintiffs entered into when signing up for the Mudderella event, Plaintiffs must press the Underlying Claims, if at all, in mediation then and, if unsuccessful, arbitration.  (*Id.* (citing *Pazol v. Tough Mudder Inc.*, 100 F. Supp. 3d 74 (D. Mass. 2015))).

Plaintiffs appealed to the U.S. Court of Appeals for the First Circuit, which ordered the action remanded to the Worcester Superior Court, without prejudice to later removal, due to insufficient evidence that the amount in controversy requirement for CAFA had been met.  (*Id.* (citing *Pazol v. Tough Mudder, Inc.*, 819 F.3d 548 (1st Cir. 2016))).  The First Circuit did not reach the arbitration question or the merits of this dispute.  (*Id.*).

After remand, Tough Mudder again moved to dismiss or stay and to compel mediation and arbitration.  (*Id.*)  On January 24, 2017, the Superior Court granted Tough Mudder's motion and issued an Order dismissing Plaintiffs' action in full and compelling Plaintiffs to pursue their claims, if at all, individually in mediation and, if unsuccessful, then arbitration.  (*Id.*)  Plaintiffs appealed to the Massachusetts Appeals Court, which, on May 7, 2018, affirmed the Superior Court's Order.  (*Id.* at 2-3 (citing *Pazol v. Tough Mudder, Inc.*, 93 Mass. App. Ct. 1109 (2018), *review denied*, 480 Mass. 1104 (2018))).  Plaintiffs petitioned for further appellate review, which the Supreme Judicial Court denied on June 29, 2018.  (*Id.* at 3 (citing *Pazol*, 480 Mass. 1104)).

## II.   THE PARTIES' MEDIATION

While Plaintiffs' application for further appellate review was pending and following several orders that Plaintiffs mediate and arbitrate, Tough Mudder offered, and Plaintiffs agreed, to mediate the Underlying Claims.  (*Id.*; SAC ¶¶ 63-64.)   Mediation took place on

September 21, 2018 and resulted in a settlement agreement. (Dkt. 15 at 3; SAC ¶¶ 64-65.) That agreement was later formalized in a settlement agreement executed by the parties and their counsel on October 10, 2018 (the "Settlement Agreement"). (Dkt. 15 at 3; SAC ¶ 66 and Exhibit G.)

### III.   PLAINTIFFS' ATTEMPTS TO REVIVE THE UNDERLYING CLAIMS AGAIN

Due to temporary and unforeseen circumstances beyond Tough Mudder's control, it was unable to pay the settlement amount at the time it became due. (*See* Dkt. 15 at 3; SAC ¶¶ 68-69.) Ignoring Tough Mudder's efforts to rectify the situation and satisfy is obligations, Plaintiffs sought instead to revive their long-dismissed and settled Underlying Claims. They filed emergency motions in the Superior Court for relief from judgment under Mass. R. Civ. P. 60(b)(6) and for a temporary restraining order and preliminary injunction. (Dkt. 15 at 3; SAC ¶ 71.) After hearing, the Superior Court expressly took no action on Plaintiffs' motions and agreed to consider a motion to amend the First Amended Complaint to include Plaintiffs' claims arising out of the Settlement Agreement.[2]

On January 2, 2019, Plaintiffs served Tough Mudder with a Chapter 93A demand letter demanding (1) full payment of the settlement amount plus statutory interest; (2) an additional $100,000; (3) the costs of mediation; and (4) a written public apology. (*See* SAC, Exhibit H.)[3]

On January 7, 2019, Plaintiffs filed an emergency motion in the Superior Court for leave to file the SAC. (Dkt. 15 at 3.) Tough Mudder removed this action to this Court on

---

[2] As mentioned previously, amending the complaint relating to the Underlying Claims is not procedurally proper because that complaint had been dismissed. Thus, there was no operative complaint to amend. Plaintiffs should have instituted a new action concerning the settlement-related claims.

[3] While not referenced or attached to the SAC, Tough Mudder responded promptly to Plaintiffs' demand on January 4, 2019 and offered to pay the following on January 10, 2019: (1) the full settlement amount *plus* (2) interest at the statutory rate from November 26, 2018 to January 10, 2019 *plus* (3) the costs of mediation. Tough Mudder also agreed to provide Plaintiffs a public written apology. Plaintiffs waited until January 21, 2019 to formally reject Tough Mudder's offer.

January 10, 2019 based on diversity of citizenship. (Dkt. 1; Dkt. 15 at 3.) As noted above, the Superior Court allowed Plaintiffs' motion to amend, apparently acting before it received notice of the removal of this action. (*See* Dkt. 15 at 3.)

The first half of the SAC, including Counts I-IV, is identical to the dismissed First Amended Complaint setting forth the Underlying Claims. (*See* SAC ¶¶ 1-51.) Plaintiffs then tack on allegations and claims related to Tough Mudder's purported misconduct in connection with the Settlement Agreement. (*See id.* ¶¶ 52-93.) Plaintiffs' claims related to the Settlement Agreement are:

    Count V:    Breach of Contract – JAMS Settlement Agreement and Settlement Agreement

    Count VI:    Breach of the Covenant of Good Faith and Fair Dealing – JAMS Settlement Agreement and Settlement Agreement

    Count VII:    Violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, §§ 2 and 9

    Count VIII:    Declaratory Judgment / Federal Arbitration Action / Massachusetts Arbitration Act

On January 11, 2019, Plaintiffs renewed their preliminary injunction motion in this Court. (Dkt. 9.) Following a hearing and Tough Mudder's submission of a declaration addressing the Court's inquiry regarding any planned modification of Tough Mudder's corporate status, this Court denied Plaintiffs' motion. (*See* Dkts. 15-17.)

**ARGUMENT**

I.   **ALL CLAIMS RELATED TO THE MUDDERELLA EVENT MUST BE ARBITRATED, IF PURSUED AT ALL.**

Over the last four years, federal and state courts in Massachusetts have consistently held that Counts I-IV are subject to mediation and arbitration. Nothing has transpired to change this result. While Plaintiffs are unhappy that Tough Mudder was unable to pay the settlement amount in November 2018, they have no basis for refusing Tough Mudder's attempts to remedy the situation and, instead, forging ahead with claims that have been dismissed repeatedly. To the extent that Counts I-IV have been formally "revived," they should be dismissed once again.

Moreover, Count VIII is not the key to resurrecting Counts I-IV, as Plaintiffs may hope. Count VIII is merely a recasting of Counts I-IV and, as such, suffers from the same deficiencies. It, too, should be dismissed.

   A.   **Legal Standard**

As this Court has held more recently in connection with Plaintiffs' preliminary injunction motion (*see* Dkt. 15 at 4-6), there is a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). The FAA provides that a court, upon determining that an action before it is subject to an enforceable arbitration agreement, "*shall . . . stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Additionally, upon determining the validity of the arbitration agreement and that one party has failed to comply, "the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. § 4 (emphasis added).

### B.     It Is Settled that Counts I-IV Are Subject to Arbitration.

Counts I-IV are the same causes of action stated with the same allegations as in Plaintiffs' First Amended Complaint, which was dismissed by this Court in 2015 (*Pazol*, 100 F. Supp. 3d 74, *rev'd on other grounds*, 819 F.3d 548) and the Worcester Superior Court in 2017.  *See Pazol*, 93 Mass. App. Ct. 1109 (affirming dismissal by Superior Court), *review denied,* 480 Mass. 1104.  As this Court found in its January 17, 2019 Order, the parties mediated those claims and entered into a Settlement Agreement in October 2018, which included a release of those claims.  (Dkt. 15 at 3, 7; SAC, Exhibit G.)

These orders and Plaintiffs' release are fatal to Counts I-IV.  Plaintiffs may enforce the Settlement Agreement, which would require they observe their release of "any and all claims . . . which are or could be asserted that are in any way related to" Plaintiffs' First Amended Complaint.  (SAC, Exhibit G at 1, 3.)  Or, they can seek to rescind the Settlement Agreement and adjudicate the Underlying Claims in individual arbitrations, as ordered by every state and federal court that has addressed Counts I-IV.  *See Pazol*, 100 F. Supp. 3d 74; *Pazol*, 93 Mass. App. Ct. 1109, *review denied*, 480 Mass. 1104.  They cannot, however, achieve their desired result of litigating the Underlying Claims as a class in court.  Consequently, Counts I-IV should be dismissed.

### C.     Count VIII Also Falls Within the Scope of the Arbitration Clause, and Should Be Dismissed.

Attempting to find yet another avenue to litigate their defunct Underlying Claims, Plaintiffs seek a declaratory judgment that they are entitled to proceed with Counts I-IV via class litigation rather than individual arbitrations as previously ordered.  Count VIII is derivative of – and thus suffers the same legal infirmities as – Counts I-IV, and it is subject to arbitration.  Consequently, Count VIII should be dismissed.

4827-1196-6854

First, Plaintiffs seek "an adjudication that any class action waiver is unenforceable" but provide no basis whatsoever for the Court to make such a finding. *See* SAC ¶ 92. There are no grounds for adjudication of Plaintiffs' claims – regardless of forum – on a class basis. Plaintiffs' claims must be adjudicated individually.

Second, as discussed above, the appropriate forum for resolution of Counts I-IV, if such resolution is even warranted, is arbitration. The arbitration agreement is clear on this point:

> Mediation and Arbitration: In the event of a legal issue, I agree to engage in good faith efforts to mediate any dispute that might arise. Any agreement reached will be formalized by a written contractual agreement at that time. *Should the issue not be resolved by mediation, I agree that all disputes, controversies, or claims arising out of my participation in the Mudderella event shall be submitted to binding arbitration.*

(Dkt. 15 at 2 (emphasis added).) As this Court recognized, this arbitration agreement, which must be given broad construction, "has already been held valid and enforceable" and "includes *all* disputes, controversies, or claims arising out of [Plaintiffs'] participation in the Mudderella event." (Dkt. 15, at 7 (internal quotation marks omitted, emphasis added)). Crucially, "[t]he arbitration agreement, however, only requires Plaintiffs to proceed to arbitration *'[s]hould the issue not be resolved by mediation[]'*" – but "Plaintiffs' claims *were* resolved by mediation[.]" (*See* Dkt. 15 at 7 (quoting Dkt. 10-3 at 9) (emphasis added).) Thus, the remedy available to Plaintiffs is to enforce the Settlement Agreement rather than trying to circumvent the arbitration agreement once again.

Despite Plaintiffs' latest attempts to litigate the Underlying Claims in court, they agreed to arbitration. Consequently, Count VIII must be resolved in arbitration, if at all, and should be dismissed.

## II. PLAINTIFFS' NEW CHAPTER 93A CLAIM (COUNT VII) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In another attempt to expand this dispute far beyond the timing of the settlement payment, Plaintiffs plead a new claim under Mass. Gen. Laws c. 93A. Plaintiffs cannot escape the fact that, at its core, this dispute concerns enforcement of the Settlement Agreement (by which Tough Mudder has already readily agreed to abide and make Plaintiffs whole). As a simple contract dispute, Plaintiffs' Chapter 93A claim fails and Count VII should be dismissed.[4]

The pleading standard is familiar and well-settled. "A plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations omitted). What is required at the pleading stage are "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief, in order to reflect "the threshold requirement of [Fed. R. Civ. P.] 8(a)(2) that the plain statement possess enough heft to show that the pleader is entitled to relief." *Id.* at 557 (internal quotations omitted). "A formulaic recitation of the elements of a cause of action will not do." *Id.* at 545. While "[t]he pleading standard Rule 8 announces does not require detailed actual allegations, [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Plaintiffs' allegations in support of Count VII do not meet this standard, and Count VII should be dismissed.

---

[4] As a procedural matter, Plaintiffs failed to file their Count VII in accordance with Mass. Gen. Laws c. 93A, § 9. Section 9 provides in relevant part that "[a]t least thirty days prior to the filing of any such action, a written demand for relief . . . shall be mailed or delivered to any prospective respondent." Mass. Gen. Laws c. 93A, § 9. Plaintiffs served their Chapter 93A demand letter on January 2, 2019. Therefore, without regard to when Tough Mudder responded, Plaintiffs were statutorily required to wait until February 1, 2019 before filing Count VII. Notwithstanding the procedural impropriety, Count VII should be dismissed with prejudice on substantive grounds as set forth herein.

As set forth in Count VII and Plaintiffs' demand letter, Plaintiffs allege that the fact that Tough Mudder did not pay the settlement amount on November 26, 2018 constituted an unfair and deceptive act or practice. (SAC ¶¶ 82, 84 and Exhibit H.) Under Massachusetts law, Plaintiffs' allegations do not give rise to a cognizable Chapter 93A claim. It is well-settled that "a mere good faith dispute, failure to pay, or simple breach of contract" does not constitute a Chapter 93A violation. *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013) (citing *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55-56 (1st Cir. 1998)). Rather, to rise to the level of Chapter 93A violation, a failure to pay or breach of contract must have "an extortionate quality." *Arthur D. Little*, 147 F.3d at 55 (quoting *Atkinson v. Rosenthal*, 33 Mass. App. Ct. 219, 266, 598 N.E.2d 666 (1992)); *Gamboa v. MetroPCS Mass., LLC*, No. 16-10742-GAO, 2017 WL 1227916, at *3 ("Massachusetts courts have consistently required unfair and deceptive practices to be more than a 'mere breach of contract, but rather must show misconduct arising to the level of commercial extortion or a similar degree of culpable conduct."); *Lam v. PNC Mortgage*, 130 F. Supp. 3d 429, 435-36 (2015) (same). Without that extortionate quality, even conduct that is "deliberate and for reasons of self-interest" does not violate Chapter 93A. *Atkinson*, 33 Mass. App. Ct. at 266, 598 N.E.2d at 670-71; *see also, e.g.*, *Kobayashi v. Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 505, 678 N.E.2d 180, *rev. denied*, 425 Mass. 1102, 680 N.E.2d 101 (1997) (breach of a lease did not violate Chapter 93A where there was no evidence that landlord violated lease "to gain an economic advantage" over tenant "or to extort a concession").

Here, Plaintiffs have not pled and cannot show that there was an "extortionate quality" or "commercial extortion" involved in Tough Mudder's conduct. Thus, Count VII fails. The gravamen of Count VII is that "Tough Mudder's conduct with respect to the JAMS Settlement Agreement and the Settlement Agreement" was allegedly unfair and deceptive. (SAC ¶¶ 82, 84

and Exhibit H.) That conduct, as Plaintiffs allege, was that "Tough Mudder has breached its contract with Plaintiffs by failing to pay the money due pursuant to the JAMS Settlement Agreement and the Settlement Agreement." (*Id.* ¶ 77.) Plaintiffs do not point to any "extortionate" conduct by Tough Mudder or "economic advantage" that Tough Mudder sought or, in fact, achieved – nor can they. Indeed, should Plaintiffs prevail on their breach of contract claim, they would be entitled to the settlement amount *plus* interest at the statutory rate – thus putting Tough Mudder at an economic *dis*advantage. Pre-judgment interest, which Tough Mudder has offered to pay, adequately compensates Plaintiffs (as it was intended) for Tough Mudder's delay in making the settlement payment. *Sterilite Corp. v. Continental Cas. Co.*, 494 N.E.2d 1008, 1011 (Mass. 1986) ("G.L. c. 231, § 6C 'is designed to compensate a damaged party for the loss of use or unlawful detention of money' . . . 'so that a person wrongfully deprived of the use of money should be made whole for his loss' . . . [not to provide] a windfall for plaintiffs amounting, in essence, to an award of punitive damages."); *see also In re Gianasmidis*, 318 F. Supp. 3d 442, 449 (D. Mass. 2018) ("The purpose of prejudgment interest is to compensate a party 'for the loss of use or the unlawful detention of money' [not] 'to penalize the wrongdoer, or to make the damaged party more than whole.'"). Plaintiffs cannot show that Tough Mudder sought to gain, or in fact gained, any advantage by not making the settlement payment on November 26, 2018. Consequently, Count VII fails and should be dismissed.

## CONCLUSION

For the foregoing reasons, Tough Mudder respectfully requests that the Court dismiss with prejudice Counts I-IV and VI-VIII of Plaintiffs' Second Amended Complaint and grant such other relief as the Court deems just and proper.

Respectfully submitted,

TOUGH MUDDER INCORPORATED,
TOUGH MUDDER, LLC, and
BK BRIDGE EVENTS, LLC

By their attorneys,

Dated:  February 1, 2019

*/s/ Michael Thompson*
Michael J. Tuteur, BBO# 543780
Michael Thompson, BBO# 673497
Olivia B. Luckett, BBO# 696497
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Tel. 617.342.4000
Fax. 617.342.4001
mtuteur@foley.com
mxthompson@foley.com
oluckett@foley.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system on February 1, 2019, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  Persons not receiving notice through the ECF system will be served by electronic mail and overnight mail.

*/s/ Michael Thompson*
Michael Thompson